FILED

01/12/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs November 17, 2020

## STATE OF TENNESSEE v. PHILLIP HARVEY WALLACE

**Appeal from the Criminal Court for Union County
Nos. 5263 & 5376      E. Shayne Sexton, Judge**

_____

### No. E2020-00532-CCA-R3-CD

_____

The defendant, Phillip Harvey Wallace, appeals the sentencing decision of the trial court that followed the revocation of his probation in case number 5263 and his pleading guilty in case number 5376, arguing that the trial court erred by failing to consider a community corrections placement and by ordering that the 12-year sentence imposed in case number 5376 be served consecutively to the remainder of the two-year sentence in case number 5263. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Brandon T. Kibert, Middlesboro, Kentucky (on appeal); and Travis D. Patterson, Maynardville, Tennessee (at trial), for the appellant, Phillip Harvey Wallace.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Jared Effler, District Attorney General; and Ronald Laffitte, Assistant District Attorney General, for the appellant, State of Tennessee.

### OPINION

The defendant was charged in case number 5263 via information with one count of felony evading arrest, one count of the possession of hydrocodone, and one count of attempted forgery. On February 8, 2017, the defendant pleaded guilty as charged in exchange for a total effective sentence of two years, to be served as 86 days' incarceration followed by probation. A violation of probation warrant issued on March 14, 2017, alleging that the defendant had violated the terms of his probation by failing to report following his release from jail. An amended violation warrant, issued on July 26, 2017,

added allegations that the defendant had violated the terms of his probation by committing the new offense of theft, absconding from supervision, failing to obtain a drug and alcohol assessment, and failing to pay court costs. On December 12, 2017, the trial court revoked the defendant's probation but ordered him returned to probation.

Another violation warrant issued on February 27, 2018, alleging that the defendant had violated the terms of his probation by failing to report and failing to pay court costs. On June 1, 2018, the district attorney's office petitioned the court to revoke the defendant's probation based upon his failure to pay court costs and restitution as ordered by the trial court. The trial court passed the case in August and October 2018, and, on November 13, 2018, an amended violation warrant issued, alleging that the defendant had violated the terms of his probation by committing a slew of new offenses. Another amended violation warrant that contained essentially the same allegations issued on December 5, 2019. The trial court heard the violation on January 30, 2020, in conjunction with the sentencing hearing in case number 5376.

In case number 5376, the Union County Grand Jury charged the defendant with a single count of theft of property valued at $2,500 or more but less than $10,000 in July 2017. In February 2019, the trial court granted the defendant a furlough "to go to an inpatient facility at God's Place Ministry and Recovery" in Knoxville. The defendant entered an open plea to the single charge in the indictment on November 18, 2019. No transcript of the guilty plea submission hearing was included in the record on appeal. The affidavit of complaint included the following factual summary:

> This offense occurred on or about February 21, 2017, at 175 Peters Road which is situated within the confines of Union County, TN. On said date the defendant removed a working 3 ton heat pump at the residence by cutting the copper and electrical connections with a saw and tobacco knife. A sample of blood was collected from the scene that had been left by the offender. The defendant was located a short time later on the same date attempting to sell the copper and aluminum coil from the unit at Buckeye's Scrap Yard in Luttrell, TN. The defendant was bleeding from his hand and temple area. The defendant gave consent for a sample of his blood to be taken. The rightful owner of the heat pump, Gene Ford, has suffered a total loss as a result of this crime which he values at $5,000 to replace. . . .

At the January 30, 2020 combined sentencing and revocation hearing, Bart Short, a probation officer with the Tennessee Department of Correction ("TDOC"),

testified that he was asked to perform a drug screen on the defendant. Mr. Short said that he "was watching [the defendant] pretty closely and noticed that," although the defendant "handed me the cup with the urine in it, I never did see urine come out so I performed a search on him." Mr. Short discovered that the defendant "had this tube wrapped around him on his shoulders. It went down through his back. And I guess he kind of squeezed the urine in the cup." Mr. Short said that this incident occurred while the defendant was living in a halfway house as part of a rehabilitation program.

During cross-examination, Mr. Short said that after he "caught him with the falsification," the defendant admitted that he had relapsed.

Upon questioning by the court, Mr. Short said that the incident occurred at the end of 2019 while the defendant was "furloughed . . . out to the halfway house" and that the drug screen was performed as part of the preparation of the presentence report.

The defendant testified that, because he did not have a driver's license, he "had to have a woman that I knowed [sic] in Knoxville to take me" to the appointment for the drug screen. He said that he had a headache at that time, so he "asked my driver if she had something for a headache," and she told him to look in her purse. He said that he found a pill "in a chewable aspirin bottle" and "swallowed it." He claimed that, although he "had seen Suboxone strips before," he had "never seen a Suboxone pill." The defendant insisted that "it was purely by accident, but the thing was done." He insisted that Mr. Short "did not do a search and find the hose on me" and that, instead, "I jerked the hose off me because I didn't want to be a liar."

The defendant said that, at the time of the incident, he resided at God's Place Ministries, a halfway house where he was completing drug rehabilitation. He said that he had submitted to and passed several random drug tests while in the program. He asked the court for mercy.

During cross-examination, the defendant insisted that he did not know that he had taken Suboxone but admitted that he took steps to falsify the drug test, saying, "I was in a panic."

Billy Greenlea, the house director for God's Place Ministries in Knoxville, testified that the defendant had passed a number of drug tests during his time in the program. He said that, if the defendant returned to the program, Mr. Greenlea could arrange for him to be tested more often. Mr. Greenlea acknowledged that he had never seen a device like the one the defendant used to try and falsify the drug test in this case.

The presentence report, which was exhibited to the hearing, established that the defendant had previously been charged with over 150 separate offenses that had, including traffic offenses, resulted in some 75 prior convictions. The 44-year-old defendant's criminal history, which began with a charge of marijuana possession shortly after his 18th birthday, spanned the entirety of his adult life.

The trial court characterized the defendant's claim that he came "in with this effort to defeat the screen even though he would . . . have been clean but for this unknown pill that he popped on his way" as "the most absurd thing that I have ever heard." The court added, "I cannot grasp why [the defendant] or anyone else would think anybody of sound mind would believe that, anybody, not just Judges." The trial court noted that, as a career offender with a 12-year sentence for a nonviolent felony, the defendant "technically" was eligible for community corrections but that the issue was his "suitability" for such a placement. After "reviewing the presentence investigation, the file itself, [and] taking the proof" presented at the hearing, including the defendant's testimony, the trial court found that the defendant's "continued supervision on release would be inappropriate." The court observed that the proof at the hearing was particularly relevant to the defendant's suitability for a sentence involving release into the community and his amenability to correction. The court also observed as "most convincing" the fact that the defendant had violated every probationary term to which he had been sentenced. The court found that "[t]he question of whether or not it reasonably appears the defendant will abide by the terms of probation" was "solidly against the defendant" and that, given "that he has a history of violence," confinement was necessary to protect society "from possible future criminal conduct." The court also found that measures less restrictive than confinement had both frequently and recently been tried in the defendant's case without success, saying, "I've tried everything in my book. Every tool in my box has been thrown at [the defendant], and he's thrown them on the ground." The court ordered the defendant to serve his 12-year sentence in TDOC.

The court revoked the defendant's probation in case number 5263 and ordered that the defendant serve the 12-year sentence in case number 5376 consecutively to the two-year sentence in case number 5263 based upon the defendant's extensive record of criminal activity. The trial court gave the defendant credit against the two-year sentence in case number 5263 for all the time he had served in confinement.

In this appeal, the defendant argues that the trial court failed to properly consider his suitability for a community corrections placement and challenges the consecutive alignment of the sentences.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing

-4-

decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709. The abuse-of-discretion standard of review and the presumption of reasonableness also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

*Alternative Sentencing*

When a trial court orders a fully-incarcerative sentence, it must base the decision to confine the defendant upon the considerations set forth in Code section 40-35-103(1), which provides:

> (1) Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

T.C.A. § 40-35-103(1).

Contrary to the defendant's assertion, the trial court specifically considered his suitability for a community corrections placement. The court initially noted that the

-5-

defendant "technically" was eligible for community corrections placement but found that confinement was necessary to protect society from a defendant with a long history of criminal conduct and that measures less restrictive than confinement had frequently and recently been applied to the defendant. The record fully supports these findings. The defendant outfitted himself with an elaborate apparatus in an attempt to defeat the drug screen for his presentence report in case number 5376, at a time when he was on probation in case number 5263 and on a furlough in case number 5376 granted for the purpose of his obtaining drug and alcohol treatment. We agree with the trial court that there is nothing that a community corrections placement could offer the defendant that has not already been offered to him.

*Consecutive Sentencing*

The standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013).

The trial court based its decision to align the sentences consecutively on the defendant's extensive criminal history. *See* 40-35-115(b)(2). The record clearly supports the trial court's finding that the defendant's criminal history was extensive. Additionally, we note that the defendant was charged in case number 5263 in January 2017 for offenses committed in October and November 2016. He pleaded guilty to those offenses on February 8, 2017, and then committed the theft offense in case number 5376 less than two weeks later on February 21, 2017. Thus, consecutive sentences were also justified on the basis that the defendant was on probation in case number 5263 when he committed the offense in case number 5376.

Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE